JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL MILLER, an individual,<br><br>    Plaintiffs,<br><br>v.<br><br>DIRECTORS GUILD OF AMERICA INC., a California non-profit corporation,<br><br>    Defendant. | Case No. 2:25-cv-08118-HDV-Ex<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [15]** |

I.   **INTRODUCTION**

This case concerns a dispute over a film director's alleged expulsion from the Directors Guild of America ("DGA") following a fatal accident on a motion picture set. Plaintiff Randall Miller filed this action in Los Angeles Superior Court alleging claims against Defendant DGA for breach of contract, breach of the covenant of good faith and fair dealing, and breach of the common law duty of fair procedure. Complaint [Dkt. 1-1]. Miller alleges that DGA breached its constitution by expelling Miller as a member despite not being found guilty of any conduct which was prejudicial to the welfare of DGA, and breached the other common law duties in a subsequent disciplinary procedure by proceeding in bad faith. *Id.* ¶ 7. DGA removed the action based on federal question jurisdiction, arguing that Miller's claims are preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), because they concern an alleged breach of a labor organization's constitution. Notice of Removal at 3 [Dkt. 1].

Before the Court is Miller's Motion to Remand (the "Motion"), which is fully briefed and came on for oral argument on November 6, 2025. *See* Motion [Dkt. 15]; Opposition [Dkt. 16]; Reply [Dkt. 19]; [Dkt. 21]. Miller contends that his claims do not fall within the scope of Section 301(a) because, although the action concerns the alleged breach of a union constitution, the plain language of Section 301(a) only preempts disputes involving contracts or constitutions between an employer and a labor organization or between two labor organizations—circumstances not present here. Motion at 1. The Court agrees. Because DGA has not met its burden of establishing removal is proper under federal question jurisdiction, the entire matter is remanded.[1]

---

[1] Also before the Court are DGA's Motion to Dismiss and Motion for Sanctions. [Dkts. 7, 14]. DGA moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that the preempted claims are time-barred under the six-month statute of limitations (all claims are based on events from 2022). *See generally* Defendant's Motion to Dismiss (citing Section 301(a) of the LMRA, 29 U.S.C. § 185(a)). In light of the Court's determination that removal is not warranted and its concomitant grant of remand to the state superior court, the Motion to Dismiss is denied as moot. Further, because the Defendant's Motion for Sanctions is also made, in large part, on this overlapping basis, it is similarly denied. *See* Defendant's Motion for Sanctions at 3.

## II. BACKGROUND

Randall Miller is a film director who had been a member of DGA for many years. Complaint ¶ 2. During the filming of the motion picture *Midnight Rider*, for which Miller was the director and producer, a production crew member tragically died in an on-set accident. *Id*. Miller ultimately served a year-long prison sentence for criminal trespass and involuntary manslaughter followed by ten years of supervised probation, which ended in March 2025. *Id*. Miller alleges that he requested DGA's assistance during his criminal prosecution, but it refused help. *Id*. ¶¶ 3-4.

After Miller was released from jail in October 2015, DGA brought a disciplinary proceeding against him based on certain sections of the DGA constitution for being "guilty of any act, omission, or conduct which is prejudicial to the welfare of the Guild." *Id*. ¶ 5. This resulted in Miller's suspension from directing DGA films for one year. *Id*. In 2021, DGA initiated a second disciplinary proceeding after a Georgia state court conducted a hearing on whether Miller violated a probation condition by directing the motion picture, *Coffee Wars*. *Id*. ¶ 6. According to Miller, the court found that he had acted in good faith because he believed he was still permitted to direct so long as he had no responsibility over on-set safety, but DGA nonetheless found Miller in violation of the DGA constitution and imposed a lifetime ban. *Id*. Miller alleges he appealed the ban, but DGA never ruled on it. *Id*. Miller's claims here are grounded in the assertion that DGA violated its own constitution by expelling him as a member despite him not actually being guilty of violating its provisions. *Id*. ¶ 7.

## III. LEGAL STANDARD

Generally, a civil action filed in state court may properly be removed if there is federal subject matter jurisdiction at the time of removal, which exists when the suit arises under federal law or when the parties are diverse and the amount in controversy is over $75,000.[2] *See* 28 U.S.C. §§ 1441, 1331, 1332. The removing party bears the burden of establishing federal subject matter jurisdiction. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682 (9th Cir. 2006). Failure to do so requires remand. *Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1192

---

[2] The parties do not contend that diversity jurisdiction exists here.

3

(9th Cir. 2003).

According to the "well-pleaded complaint rule," "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, a plaintiff may not defeat removal simply by omitting necessary federal questions. *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010). If an area of state law has been "completely preempted," any state law claim thereunder is "considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

## IV.   DISCUSSION

Section 301(a) of the LMRA provides that federal courts have jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization . . . or between any such labor organizations . . . ." 29 U.S.C. § 185(a). Although preemption is not explicitly in the statute, courts have consistently held that the LMRA "authoriz[es] federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985).

In the collective bargaining context (*i.e.*, contracts between an employer and a labor organization), the Court applies a two-part inquiry for determining whether Section 301(a) preempts state law claims, which assesses whether the claim involves a right that exists solely because of a collective bargaining agreement, or whether that right is "substantially dependent" on analyzing the collective bargaining agreement. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412-13 (1988); *Caterpillar*, 482 U.S. at 393; *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032-35 (9th Cir. 2016). Here, neither DGA nor Miller are an "employer," and there is no collective bargaining agreement that governs their relationship, so this analysis does not apply.

A union constitution may also constitute a "contract" for purposes of Section 301(a) preemption. *United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. v. Local 334*, 452 U.S. 615, 621 (1981) ("*Plumbing and Pipefitting*"). *Plumbing and Pipefitting* held that a suit by a local union against its parent international union alleging violations of the parent

4

1    union's constitution was preempted by Section 301(a) because the parent constitution constituted a
2    contract between two labor organizations (the parent and the local union). *Id*. at 622-23. Here,
3    however, Miller is not a "labor organization" like both the parent and local union organizations in
4    *Plumbing and Pipefitting*.

5    Although union members, like Miller, are not "labor organizations," their claims have been
6    found preempted under Section 301(a) when the contract or constitution at issue is one between
7    labor organizations for which the member is a third-party beneficiary. For example, in *Wooddell v.*
8    *Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93 (1981), a union member asserted claims against
9    his local chapter of the International Brotherhood of Electrical Workers ("IBEW") alleging, *inter*
10   *alia*, violations of the IBEW constitution. 502 U.S. at 96. The Supreme Court held that because
11   "union constitutions are an important form of contract between labor organizations," union members
12   "are often the beneficiaries of such interunion contracts, and when they are, they likewise may bring
13   suit on these contracts under § 301." *Id*. at 101. The Ninth Circuit has applied this same reasoning
14   where the lawsuit brought by a union member is based on a contract between labor organizations,
15   typically an international and local union. *See Garcia v. Serv. Emps. Int'l Union*, 993 F.3d 757, 763
16   (9th Cir. 2021) (holding that "§ 301 preempts state law claims based on a union constitution to the
17   extent the constitution is a contract between labor unions").

18   DGA glosses over the nuances of *Wooddell*, *Plumbing and Pipefitting*, and *Garcia*, and
19   instead argues that *any* union constitution, regardless of whether it is between labor organizations, is
20   preempted by Section 301(a). A plain reading of the statute does not afford such a broad conclusion.
21   The Seventh Circuit analyzed *Wooddell* and other similar cases and explained that "in each of these
22   cases it was the constitution of an *international* union that was at issue, and an international union is
23   plausibly conceived as a contractual union of its locals . . . . The constitution of a local union, in
24   contrast, is a contract between the union and its members . . . . A suit on a contract between a labor
25   organization and a member is not within the scope of section 301." *Korzen v. Loc. Union 705, Int'l*
26   *Bhd. of Teamsters*, 75 F.3d 285, 288 (7th Cir. 1996). District courts have subsequently applied the
27   same reasoning in *Korzen* and found that Section 301 did not preempt claims where the constitution
28   at issue was not between labor organizations. *See, e.g.*, *Padilla-Gonzalez v. Loc. 1575, Int'l*

5

*Longshoremen's Ass'n*, 635 F. Supp. 2d 105, 110 (D. Puerto Rico 2009) ("[L]ocal constitutions concern the relationship between individual members and the local, not between two unions. The text of section 301 clearly mandates a contract between two unions."); *Murdock v. Am. Mar. Officers Union Nat'l Exec. Bd.*, 614 F. Supp. 3d 1269, 1277 (S.D. Fla. 2022) ("Union members may not bring a section 301 claim for an alleged breach of a local union's constitution, as such a constitution is merely a 'contract between the union and its members.'"); *Commer v. Dist. Council 37, Loc. 375*, 990 F. Supp. 311, 321, n.13 (S.D.N.Y. 1998) ("*Wooddell* does not apply, as here, to claims where the purported contractual agreement is between the individual member and the union.").

The Court finds the reasoning of these sister courts persuasive. Here, there is no allegation that DGA is anything but a standalone organization lacking any relationship with a parent or international organization governed by a constitution. *See generally* Motion; Opposition. As such, the DGA constitution upon which Miller brings this breach of contract action is a contract between a union and its members—not a contract between labor organizations—and therefore outside the scope of Section 301(a).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is granted. The action is remanded back to the Superior Court for the State of California, County of Los Angeles.

Dated: November 24, 2025

Hernán D. Vera
United States District Judge